Southerland v. Whittington.

### SOUTHERLAND v. WHITTINGTON.

1. SPECIFIC PERFORMANCE: *Contracts concerning public lands.*
   Whittington, by virtue of his claim, occupancy and improvement of a lot in Hot Springs, applied to the commissioners appointed under the act of congress of March 3, 1877, to dispose of the lots there, to purchase it; but afterwards conveyed all his interest in the lot to Mrs. Southerland, who was his tenant upon it, with the agreement that she should apply to purchase, and if successful would, for a sum agreed on, reconvey a designated part of it to him; and she bound herself by bond for title to perform the agreement; but after she had purchased and obtained title to the lot she refused to execute it, and he filed his bill in equity for its performance. *Held:* That parties in possession of government land may make valid contracts concerning the title, formed upon the hypothesis of a future acquisition of title, unless restricted by congress, and that the contract was based on a valid consideration, and should be enforced.

APPEAL from *Garland* Circuit Court in Chancery.
Hon. J. B. WOOD, Judge of the Circuit Court.

Southerland v. Whittington.

*J. M. Harrell*, for appellant.

Agreements entered into to evade a public statute, or against public policy, are void. *34 Ark., 762; 1 Dillon, 280.*

There was no consideration for the bond for title, and courts of equity do not enforce *nude facts. 2 Story Eq. Jur.,* secs. *787, 973, 987.*

*R. G. Davies*, for appellee.

The law of this case is stated in *Gaines v. Molen, 41 Ark., 232.*

BATTLE, J.     The lot in controversy is a part of the Hot Springs reservation.     For a long time previous to, on and after the 24th day of April, 1876, Hiram A. Whittington held a claim on and occupied and improved it. On the 1st day of February, 1877, Francis B. Southerland rented of the receiver appointed by the United States court of claims to take charge of the Hot Springs reservation, a part of it, for the term of one year, and took possession thereof and built a residence thereon, of the value of $250 or $300.     When the Hot Springs board of commissioners were appointed and qualified under the act of congress of March 3, 1877, Whittington filed before it, within six months after its first session, his claim to purchase it, at its valuation to be fixed by the board, in preference to all other persons.     On the 26th day of October, 1877, Whittington conveyed to Mrs. Southerland all his interest in the lot, with the understanding and agreement that she would file before the board her petition to purchase the lot at the appraised value thereof, in preference to and exclusion of all others; that if the board should adjudge she was entitled to the relief asked for in her petition and granted it, she would re-

convey to him the lot, except a certain part thereof, by quit-claim deed, containing covenants of warranty against all claims and demands of herself, or of all persons deriving title by or through her, on condition that he paid to her the sum of $400 and the appraisement of the portion to be reconveyed within twenty days after the board should grant her petition and issue to her a certificate of that fact. The price or consideration of this conveyance of Whittington to Mrs. Southerland was $500. She executed her note to him for the $500 and afterwards only paid thereon $100. On the 27th day of October, 1877, she executed her bond for title to Whittington, and thereby bound herself to perform the agreement entered into by and between her and Whittington, as before stated. Whittington then withdrew his petition from before the board and she filed hers, within the time prescribed by law, stating therein how Whittington had claimed, occupied and improved the lot previous to the 24th day of April, 1876, and thereafter conveyed his interest therein to her, and she had rented and improved it, and was still in possession, and asked that she be allowed to purchase the lot, in preference to others, at the valuation to be fixed thereon by the board; and, afterwards, proved the truth of the allegations of her petition. On the 2d day of December, 1879, the board decided she was entitled to purchase at the appraisement and gave to her a certificate to that effect. Whittington then offered to perform his part of their agreement and she refused to perform hers; and, thereupon, on the 6th day of July, 1881, he instituted this action to compel her to do so. On the 2d day of August, 1881, she paid to the United States the appraisement of the lot, which was, at first, $600, and afterwards reduced to $240, the last amount being the sum paid. On the 30th day of March, 1882, she received a patent to the lot. On the 20th day of December, 1883,

Southerland v. Whittington.

on the final hearing in this action, the court below decreed she should perform her contract, and she appealed.

Mrs. Southerland acquired title to the lot in controversy under and by virtue of the act of congress of March 3, 1877. This act provided for the appointment, by the president, of "three discreet, competent and disinterested persons" to constitute a board of commissioners, and imposed upon them various duties. Among other things, it required them, under the direction and subject to the approval of the secretary of the interior, to designate a tract sufficiently large to include all the hot or warm springs on the land, embracing what is known as the Hot Springs mountain, which tract was declared to be reserved from sale; and to lay out the residue of the land into convenient squares, blocks, lots, avenues, streets and alleys, the lines of which were to correspond with existing lines of occupants of the reservation as near as might be consistent with the interests of the United States. It also provided that they should, by a map prepared for that purpose, show the metes and bounds of the parcels or tracts claimed by reason of improvements thereon, or occupied on the reservation; should hear proofs offered by claimants and occupants in respect to the lands and improvements, and finally determine the right of each claimant or occupant to purchase the same, or any portion thereof, at the appraised value fixed by the commissioners; and to issue to each claimant a certificate, setting forth the amount of land the holder was entitled to purchase, and its valuation, and also the character and valuation of the improvements. It declared that claimants and occupants should file their claims before the commissioners, within six months after the first session of the board, or that their claims should be barred; and that no claim should be considered which had accrued after the 24th of April, 1876.

It is evident, therefore, that Mrs. Southerland derived her right and was allowed to purchase the lot in controversy through the deed executed to her by Whittington, and that her bond for title to him is based upon a good and valuable consideration.

There was no law forbidding claimants and occupants of the Hot Springs reservation to make contracts concerning their possessory rights, and concerning the title thereto to be acquired by them in the future from the United States. Such contracts are valid as between the parties to the contract. "The right of the United States," says Mr. Justice Miller, in *Lamb v. Davenport, 18 Wal., 314,* "to dispose of her own property is undisputed, and to make rules by which the lands of the government may be sold or given away is acknowledged; but, subject to these well-known principles, parties in possession of the soil might make valid contracts, even concerning the title, predicated upon the hypothesis that they might thereafter lawfully acquire the title, except in cases where congress had imposed restrictions on such contracts." *Hamilton v. Fowlkes, 16 Ark, 340; Cain v. Leslie, 15 Ark., 312; Thredgill v. Pintard, 12 How., 24; Gaines v. Molen, 41 Ark., 232.*

The contract evidenced by the bond for title executed by Mrs. Southerland to Whittington is a legal and valid contract and is based on a valuable consideration, and should be enforced.

The decree of the court below is substantially correct, but is, in some respects, vague, indefinite and uncertain. This cause is, therefore, remanded with instructions to the court below to reform its decree by entering a decree herein ordering and directing appellant to execute a quit-claim deed to Whittington, when he shall pay or tender to her the sum of one hundred and seventy-one dollars and fifty cents, his proportion of the valuation of the lot in

controversy, and the note executed by her to him, or a sum equal to the amount due thereon, and thereby convey to Whittington that part of lot six, in block one hundred and thirty-three, in the Hot Springs reservation, lying southwest of a line running from Whittington avenue back through said lot, parallel with and fifty feet southwest of the southwestern boundary line of the land awarded to James O. Fox, by the Hot Springs board of commissioners, and running parallel with and fifty feet southwest of the northeastern boundary line of said lot, the fifty feet being the part of said lot reserved by her in her bond for title, and covenant against all claims and demands of herself, and of all persons deriving title by or through her; and in the event she shall refuse to accept such tender and execute the deed, authorizing Whittington to deposit the money and note so tendered with the clerk of the Garland circuit court, and ordering and directing a commissioner, appointed by the court, when such deposit shall be made, to execute the deed; and allowing appellant ninety days within which to move her improvements off that part of the lot to be conveyed to Whittington, she having reserved that right in her bond for title; and by entering a judgment in favor of Whittington against her for the costs incurred in the court below. Judgment will be entered here against appellant for the costs of appeal.